OPINION OF THE COURT
Gabrielli, J.
Plaintiffs appeal from an order of the Appellate Division which dismissed their complaint for failure properly to serve the defendant with process.[1] The outcome of their appeal depends upon the correct interpretation of CPLR 308 (subd 4), which permits substitute service by "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode * * * of the person to be served” and by "mailing the summons to such person at his last known residence”.
The case arises out of an automobile accident which occurred on April 2, 1972. Plaintiff Pauline Wilensky and her husband, Martin Wilensky, who died on the day of the accident, were injured when they were struck by a car owned and operated by defendant Bergner. At the time of the accident, Bergner was residing with his parents at 76 Aster Court, Brooklyn, the address he gave at the accident scene.
Some 30 months after the accident, plaintiff Pauline Wilensky and the administrator of the deceased Martin Wilensky’s estate attempted to commence an action against Bergner for conscious pain and suffering and wrongful death.[2] Plaintiffs’ *238 process server made two visits to the Aster Court address before affixing the summons and complaint to the door on August 27, 1974 and mailing copies of the papers to the Aster Court address on August 29.
Unbeknown to plaintiffs, however, defendant Bergner had moved from his parents’ home in February of 1973, having married and established a household of his own at 2729 West 33rd Street in Brooklyn. Although he returned to his parents’ home for a brief period in February of 1975, when his mother died, Bergner did not regularly frequent the Aster' Court address. Thus, at the time the summons and complaint were affixed to the door at 76 Aster Court, that address was not and could no longer be considered defendant’s dwelling place.
Bergner ultimately received notice that a suit was pending against him when his father mailed copies of the summons and complaint to his home. He thereafter timely moved to have the action dismissed on the ground that the attempted service was ineffective. Special Term denied the motion, finding at the outset that plaintiff had exercised "due diligence” in attempting to effect personal service before resorting to the substitute "nail and mail” method of service authorized by CPLR 308 (subd 4). As to defendant’s contention that plaintiff had failed to comply with the CPLR 308 (subd 4) requirement of affixing process to the door of the "dwelling place” or "usual place of abode”, Special Term concluded that defendant should be estopped from raising such a defense since his father’s actions in mailing the summons and complaint to his new address rather than returning them to plaintiffs through the mails "effectively concealed” from plaintiffs the fact that Bergner had moved. On appeal to the Appellate Division, however, this determination was reversed. Although the Appellate Division agreed that due diligence had been exercised in the plaintiffs’ preliminary efforts to effect service by personal delivery, it found the purported substitute service defective and, concluding that there could be no estoppel in the absence of fraud or misrepresentation on the part of defendant, granted Bergner’s motion to dismiss.
At the outset, we note that we leave undisturbed the lower courts’ findings that "due diligence” was exercised in the first instance, as we are unprepared to say that the finding was erroneous as a matter of law. We accordingly assume that the use of substitute service under CPLR 308 (subd 4) was authorized in this case and we address only the question *239 whether the purported service conformed to the requirements of the statute. We conclude that it did not.
The "nail and mail” provision of the CPLR permits a plaintiff to mail duplicate process to the defendant at his last known residence, but clearly requires that the "nailing” be done at the defendant’s "actual place of business, dwelling place or usual place of abode”. While there may be some question as to whether there is a distinction between "dwelling place” and "usual place of abode”,[3] there has never been any serious doubt that neither term may be equated with the "last known residence” of the defendant (Chalk v Catholic Med. Center of Brooklyn & Queens, 58 AD2d 822; Polansky v Paugh, 23 AD2d 643; Entwistle v Stone, 53 Misc 2d 227; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 308:4, p 208; see Siegel, New York Practice, § 72, p 78). Indeed there are cogent reasons for preserving the distinction, apart from the obvious principle that where the Legislature has used different words in a series, the words should not be construed as mere redundancies (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 231).
Under the original version of CPLR 308, service by any method other than personal delivery to the defendant was impermissible unless prior "diligent” efforts had been made to serve the defendant in person. Many commentators, however, criticized this requirement as overly stringent, contending that it was the primary cause of the disreputable practice known as "sewer service” (Sixteenth Ann Report of NY Judicial Conference, 1971, p A38; see McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR *240 308:2, p 206; 1 Weinstein-Korn-Miller, NY Civ Prac, par 308.13). Accordingly, when the statute was revised in 1970 (L 1970, ch 852), the Legislature attempted to strike a balance between the need to ensure that defendants receive actual notice of the pendency of litigation against them and the need to build into the statute sufficient flexibility to discourage cynical practices such as "sewer service”. To accomplish this goal, the Legislature enacted an amendment which permitted plaintiffs to serve by delivering process to "a person of suitable age and discretion” at the defendant’s dwelling place or usual place of abode and mailing copies of the papers to the defendant’s "last known residence”[4] without first having to attempt to effect service by personal delivery (CPLR 308, subd 2). The Legislature stopped short, however, of making any substantive changes in the "nail and mail” method of substitute service. Significantly, in both the "leave and mail” and "nail and mail” subdivisions, the Legislature retained both the requirement that the summons be delivered or affixed to the defendant’s actual place of business, dwelling place or usual place of abode and the additional requirement that the summons be mailed to the defendant’s last known residence. Presumably, the Legislature left these aspects of CPLR 308 intact in the belief that a further liberalization of the requirements for service would jeopardize the primary statutory purpose of ensuring that defendants receive actual notice of the pendency of litigation against them. In light of the Legislature’s continued adherence to these dual requirements, we cannot and should not blur the distinction between "dwelling place” and "last known residence”, since to do so would be to diminish the likelihood that actual notice will be received by potential defendants. While a rule which permits both the "nailing” and "mailing” steps to be completed at a defendant’s last known residence would make it infinitely easier to serve the "hard-to-find” defendant, such a rule would not ensure that a readily accessible defendant is given adequate notice. Hence, we find the construction of CPLR 308 (subd 4) proposed by the plaintiffs to be unacceptable (see Mullane v Central Hanover Trust Co., 339 US 306).
*241 Nor do we find any "inherent inconsistency” in requiring the "affixing” to be done at the actual dwelling place or usual place of abode while permitting the "mailing” to be completed by mailing to the defendant’s last known residence. Of course, we assume that plaintiffs will mail copies of the summons to the defendant’s actual residence where that address is known (see Siegel, New York Practice, § 72, at pp 77-78). Indeed, in cases where the defendant’s residence is known, the actual dwelling place and the last known residence would be the same location by definition. Nevertheless, we decline to view the "last known residence” clause as a mere redundancy or as evidence of inartful draftsmanship because we believe that the clause was inserted primarily to address those situations in which the defendant’s residence is unknown, but his "actual place of business” is known to the plaintiff. In such cases, service would be literally impossible if the statute did not allow the second step of "mailing” to be completed by sending the papers to the defendant’s last known residence. Thus, when the statute is read in its entirety, as it must be, it becomes clear that the Legislature deliberately used the term "last known residence” as a means of encompassing cases where only the actual place of business is known as well as cases where the defendant’s current residence is known.[5]
Turning to the facts in this case, we find that the purported service was ineffective, since the plaintiff failed to comply with the specific mandates of CPLR 308 (subd 4). The summons here was affixed to the door of defendant’s last known residence rather than his actual abode. That Bergner subsequently received actual notice of the suit does not cure this defect, since notice received by means other than those authorized by statute cannot serve to bring a defendant within the jurisdiction of the court (see, e.g., McDonald v Ames Supply Co., 22 NY2d 111). Nor may Bergner be estopped from raising the defect in service as a defense, since plaintiffs here have failed to demonstrate that Bergner engaged in conduct which was calculated to prevent them from learning of his new address (see Cohen v Arista Truck Renting Corp., 70 Misc 2d 729). Since potential defendants ordinarily have no affirmative duty to keep those who might sue them abreast of their *242 whereabouts (cf. Dobkin v Chapman, 21 NY2d 490, 504), we can find no basis for invoking the estoppel doctrine here.
The order of the Appellate Division should be affirmed, with costs.

. [1] Orders setting aside service of process are ordinarily considered nonfinal and hence are not appealable to this court as a matter of right (e.g., Theaman v Hindels, 300 NY 673; see NY Const, art VI, § 3, subd b, par [1]). Where, as here, the complaint is dismissed in connection with the order setting aside service, however, the order is deemed final and an appeal may be taken pursuant to CPLR 5601 (subd a) (Cohen and Karger, Powers of the New York Court of Appeals, § 41, p 163, n 25).

. Although there would appear to be some question regarding the timeliness of plaintiffs’ wrongful death cause of action (see EPTL 5-4.1), that question is not presented to us in this appeal.

. Plaintiffs contend that, even if the summons and complaint were not affixed at defendant’s "dwelling place”, service should nonetheless be deemed proper because the papers were "nailed” to the door of Bergner’s "usual place of abode”, his parent’s home. While we agree in principle that there may be a distinction between "dwelling place” and "usual place of abode” (see Rich Prods. Corp. v Diamond, 51 Misc 2d 675; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 308:2, p 207; 1 Weinstein-Korn-Miller, NY Civ Prac, par 308.13), we need not decide that question here, since plaintiffs’ allegations are not sufficient to support the conclusion that defendant had a "usual place of abode” at the Aster Court address separate from his "dwelling place” at the West 33rd Street address. Plaintiffs have alleged only that Bergner voted from the Aster Court address in 1974 and returned there for a brief period in 1975. Such facts, however, are not sufficient to establish the degree of permanence and stability that is necessarily implied by the term "usual place of abode” (see Smithtown Gen. Hosp. v Quinlivan, 88 Misc 2d 1031; 1 Weinstein-Korn-Miller, NY Civ Prac, par 308.13).

. The 1970 revision of CPLR 308 required the summons to be mailed to the defendant’s "last known address” (L 1970, ch 852). The word "residence” was substituted for the word "address”, however, in 1971 (L 1971, ch 176). No substantive change in the meaning of the statute was intended (Seventeenth Ann Report of NY Judicial Conference, 1972, p A38).

. We note that, in cases where neither the "actual place of business” nor the "dwelling place” or "usual place of abode” is known, the plaintiff may nonetheless serve the defendant, provided there is a jurisdictional basis, by obtaining a court order pursuant to CPLR 308 (subd 5) (see Dobkin v Chapman, 21 NY2d 490).